UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

—————

THOMAS HAROLD ZAKER,

                Plaintiff,                Case No. 2:16-cv-4

v.                                          Honorable R. Allan Edgar

ROBERT NAPEL, et al.,

                Defendants.

_____/

**OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff Thomas Harold Zaker, a Michigan state prisoner currently confined at the Marquette Branch Prison (MBP), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Warden Robert Napel, Corizon Health, Inc., Dr. William Borgerding, M.D., and Physician's Assistant Joshua Kocha.  Plaintiff has had a medical detail to wear an athletic soft shoe since 2008, following the rupture of an ulcer on Plaintiff's right ankle due to state issue shoes.  At that time, the MDOC ordered medical soft shoes from Michigan State Industries (MSI).  Plaintiff used these shoes without any problems.  In 2015, the MDOC changed vendors and began ordering soft athletic shoes from a Chinese vendor.  Plaintiff asserts that these shoes are cheaply made and have a hard plastic ridge on the ankle area.  This hard ridge rubbed directly on Plaintiff's ulcerated right ankle, which caused extreme pain.

Plaintiff alleges that he complained to Defendants, who denied his requests for a high top athletic shoe that would not rub on his ulcerous right ankle.  Plaintiff's grievances regarding this issue were denied at each step.  Plaintiff contends that Defendant Napel allowed the Nurse Respondent to answer the grievance at step II instead of personally addressing Plaintiff's complaints, which demonstrates deliberate indifference.  Plaintiff asserts that Defendant Napel's failure to act on Plaintiff's complaint caused his ulcer to rupture.  As a result, Plaintiff is now in constant pain from the exposed nerve endings in his ankle.

Plaintiff alleges that it is the policy of Defendant Corizon Health, Inc., to offer prisoners with conditions that are not life threatening only the minimum required medical care.  Plaintiff asserts that prisoners should be offered the same treatment available to civilians and that the failure to offer such care violates the Eighth Amendment.  Plaintiff alleges that Defendant

Borgerding personally denied Plaintiff's request for a high top athletic shoe without actually examining Plaintiff's foot, which caused Plaintiff to suffer from redness, pain, swelling, and a risk of infection and gangrene.

Plaintiff states that his shoe detail must be renewed yearly and he has ordered special medical shoes twice while under Defendant Kocha's care. Plaintiff received the problematic Chinese manufactured shoes on the most recent occasion. When Plaintiff immediately complained of pain in the area of his right ankle ulcer, Defendant Kocha recommended that Plaintiff wear band aids and two pairs of socks until the shoes could be broken in. However, Defendant Kocha's advice failed to address the actual problem because the plastic edge was never going soften up. Plaintiff wrote to the Legislative Corrections Ombudsman, who interviewed Plaintiff and requested that Corizon Health employees order Plaintiff a pair of high top shoes. Corizon Health responded that the treatment plan was for band aids and two pair of socks. The Ombudsman told Plaintiff that there was nothing more that he could do.

On December 15, 2015, Plaintiff's ulcer ruptured and bled, causing intense pain in Plaintiff's right ankle. Plaintiff was treated by Dr. VanKlompanberg, who ordered that an Unna boot, which is a type of compression dressing, be applied to the ulcer and recommended that Plaintiff not wear any shoe until the ruptured ulcer healed. Plaintiff claims that Defendants violated his rights under the Eighth Amendment. Plaintiff seeks compensatory and punitive damages, as well as equitable relief.

**Discussion**

      I.       Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by

a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009).  Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff claims that Defendants violated his rights under the Eighth Amendment.  The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes.  U.S. Const. amend. VIII.  The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency.  *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976).  The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner.  *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious.  *Id.*  In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm.  *Id.*  The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person."  *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004).  If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore v. Kalamazoo Cnty*., 390 F.3d 890, 898 (6th Cir. 2004), the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in

medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer*, 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the

misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at \*2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster v. Saginaw Cnty.*, 749 F.3d 437, 448 (6th Cir. 2014); *Perez v. Oakland County*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2013) (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)).

Plaintiff alleges that the denial of a high top athletic shoe constituted deliberate indifference to a serious medical need. Plaintiff attaches copies of grievance responses and excerpts from his medical record as exhibits to his complaint. In the step I grievance response to 2015 02 0254 12I1, dated February 26, 2015, C. Scott, R.N. stated:

> Investigation reveals that, according to the grievant electronic medical record, grievant has been seen multiple times by PA Kocha. PA Kocha discussed grievant condition and his shoes with the ACMO [Acting Chief Medical Officer] who stated that the grievant is receiving soft athletic shoes as ordered. [Patient] may pad the area

> and/or wear extra socks until new shoes break in.  On 2/23/15,
> grievant was seen by PA Kocha and was given some band aids and
> instruction to wear an extra pair of socks.  PA Kocha also stated that
> the lesion seen on prior visits has improved.  Grievant is encouraged
> to follow the plan of care as orderred and to notify health services
> should symptoms persist or worsen.

ECF No. 1-2, PageID.17.

In the October 28, 2015, letter to Plaintiff from the Corrections Ombudsman,

Ombudsman Analyst Eric Mattson stated:

> According to MBP health care, in July 2015 you were given padding
> for your right ankle.  It was noted that you discussed that the padding
> felt much better with your shoes.  You were then assessed on
> 10/01/15 by your Medical Provider, in which, it is documented that
> the area where you previously had skin breakdown on your right
> ankle was stable and you had no further shoe complaints.  At this
> time, it appears this issue has been resolved.

ECF No. 1-3, PageID.29.

On December 11, 2015, Plaintiff was seen by Sarah K. Flinchum, R.N., who noted

that Plaintiff was requesting padding for his ankle.  Nurse Flinchum noted that Plaintiff had medial

right ankle echymosis, with brown skin discoloration.  ECF No. 1-4, PageID.34.  On December 15,

2015, Plaintiff was seen by Dr. VanKlompenberg, who noted Plaintiff's long standing history of

venous stasis ulcers on his right ankle and observed that Plaintiff's right athletic shoe rubbed the area

under his ankle bone, which aggravated an existing sore.  Dr. VanKlompenberg stated that Plaintiff

was requesting a high top shoe, but observed that Plaintiff had a new lesion starting a little higher

above his ankle, which would be aggravated by a high top shoe.  Plaintiff stated that he wore his

slippers while in the housing unit and elevated his leg as much as possible.  Dr. VanKlompenberg

noted no signs of infection.  ECF No. 1-5, PageID.39.  Plaintiff was instructed to use compression stockings for venous insufficiency and to wear slippers or shower shoes.  *Id.* at PageID.40.

On December 22, 2015, Plaintiff was seen by Christa Laforest, R.N., who noted that Plaintiff presented with an integumentary [skin] complaint.  Nurse Laforest cleansed the affected area and applied an "Unna-Flex" elastic Unna Boot dressing. and referred Plaintiff to be seen by Dr. VanKlompenberg for signs of infection.  Nurse Laforest noted that Dr. VanKlompenberg was contacted for same day treatment and orders.  ECF No. 1-6, PageID.43.

After a careful review of the complaint and that attachments thereto, the court concludes that Plaintiff cannot show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'"  *Mitchell*, 553 F. App'x at 605 (quoting *Alspaugh*, 643 F.3d at 169).  Therefore, Plaintiff's complaint is properly dismissed.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).  For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal.  Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:   2/16/2016                                    */s/ R. Allan Edgar*
                                             R. ALLAN EDGAR
                                             UNITED STATES DISTRICT JUDGE